[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
This is a consolidated appeal from judgments of the Huron County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellants Charlotte Y. and William Y., and thereby granted permanent custody of appellants' natural children, Christina Y. and Tabbytha Y., to appellee the Huron County Department of Human Services ("DHS").
From that judgment, appellant William Y. raises the following assignments of error:
 "I. THE TRIAL COURT ERRED IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT WILLIAM Y. DID NOT SUBSTANTIALLY REMEDY THE SITUATION WHICH CAUSED THE CHILDREN TO BE PLACED OUTSIDE THE HOME.
 "II. THE TRIAL COURT ERRED IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT IT WAS IN THE CHILDREN'S BEST INTEREST THAT WILLIAM Y'S [SIC] PARENTAL RIGHTS BE TERMINATED.
 "III. THE TRIAL COURT ERRED IN FINDING THAT THE CHILDREN COULD NOT BE PLACED WITH WILLIAM Y. WHERE HE COMPLIED WITH THE PORTIONS OF THE CASE PLAN ADDRESSED TO HIM AND REMEDIED THE PROBLEMS IN THE INITIAL COMPLAINT ADDRESSED TO HIM.
 "IV. THE TRIAL COURT'S DECISION TO GRANT PERMANENT CUSTODY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 "V. THE TRIAL COURT'S JUDGMENT VIOLATES WILLIAM Y.'S FUNDAMENTAL CONSTITUTIONAL RIGHTS AND IS CONTRARY TO LAW."
Appellant Charlotte Y. has raised two additional assignments of error:
"FIRST ASSIGNMENT OF ERROR
 WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN GRANTING PERMANENT CUSTODY TO HCHS BASED ON PARENTS [SIC] FAILURE TO COMPLETE COUNSELING
"SECOND ASSIGNMENT OF ERROR
 WHETHER THE TRIAL COURT ERRED IN ITS DETERMINATION THAT HCHS PRESENTED CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY IS IN THE BEST INTEREST OF THE CHILDREN AND WHETHER THIS DETERMINATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE"
On September 30, 1997, DHS filed complaints in dependency seeking temporary or permanent custody or protective supervision of Tabbytha (case No. 18424) and Christina (case No. 18423). The complaints alleged that the girls were homeless or destitute or without proper care or support, through no fault of their parents, and that their condition or environment was such as to warrant the state, in the interests of the children, to assume their guardianship. The complaints then set forth the following facts upon which the allegations were based:
 "On or about September 19, 1997, Children Services received a complaint regarding a cigarette burn on Tabbytha [Y.]'s arm. Children Services has had contact with the Y[.] family in the past. At one point there was a voluntary case plan opened, but the family did not follow through. The concerns come from non-relative caretakers of Tabbytha age 9 and Christina, age 2. Mother is low functioning. The family is transient and is in need of stable housing. The children have been out with their mother past midnight walking the streets. Mother inappropriately discusses sexual relations and situations with Tabbytha. Mother is also alleged to drink heavily. There is an investigation into whether Tabbytha was sexually assaulted by a male friend of mothers. The Department believes that another voluntary case plan would not be fruitful and therefore due to these circumstances alleges that Christina is a dependent child."
Finally, the complaints alleged that the children were living with Charlotte and William Y. at the Dreamland Hotel in Norwalk, Ohio.
On that same day, the trial court conducted an emergency shelter care hearing after which the children were placed in the custody of their father under the protective supervision of DHS. The court further ordered that the children were not to be left alone with Charlotte without another adult present and ordered Charlotte to submit to a psychological evaluation.
Subsequently, DHS discovered that the Y. family had moved out of the Dreamland Hotel and moved in with Bill and Barb M. Tabbytha had previously disclosed to Shirleen Smith, the guardian ad litem assigned to the girls, that Bill M. had molested her. Accordingly, on October 20, 1997, DHS filed a motion for an emergency shelter care hearing to review the placement of the girls. On October 23, 1997, the court issued an order transferring custody of the children to Patricia A., Tabbytha's mentor, and granting appellants liberal visitation. The court, however, again ordered that Charlotte was not to be left alone with the children. The case proceeded to an adjudicatory hearing on November 12, 1997, at which Charlotte admitted the allegations in the complaint and the court found the children to be dependent. The court further ordered Charlotte to submit to a substance abuse assessment and to follow through with the recommendations of the counselor; ordered William to submit to a psychological evaluation; and ordered that William and the girls enter family counseling.
On November 14, 1997, an amended case plan was filed in the court below which identified seven concerns to be addressed by counseling and services:
 "1. Charlotte Y[.] has substance abuse issues.
 "2. Charlotte Y[.] has an intellectual impairment.
"3. Charlotte Y[.] is unable to protect her children.
 "4. Charlotte Y[.]'s response to stress causes significant disruption to provide care.
 "5. Charlotte Y[.] has gross deficits in parenting knowledge and skills.
 "6. Charlotte and William Y[.] have demonstrated inability to provide stable and suitable living environment.
 "7. Tabbytha needs counseling to deal with separation from parents."
To address these concerns, the case plan required Charlotte to complete a drug and alcohol assessment, to refrain from any drug or alcohol use, to refrain from purchasing any drugs or alcohol, to attend Christie Lane Services at least three times a week in order to learn new skills to help better manage daily activities, to attend parenting classes at the Huron County Counseling Center, and to initiate and attend individual counseling at the Huron County Counseling Center to learn new coping skills to deal with stress in her life. In addition, the case plan required Charlotte and William to maintain a stable and suitable living environment, to utilize community resources to obtain permanent housing, and to work with a social worker to learn new skills to appropriately manage their finances to effectively pay all bills and debts in a timely manner. Finally, the plan required William to transport Tabbytha to counseling sessions and to participate in that counseling as requested by the counselor, and required Charlotte to participate in family counseling with Tabbytha as requested by the counselor.
Subsequently, DHS filed a motion for an emergency shelter care hearing to review the placement of the girls because Patricia A. was no longer able to care for them. Accordingly, on November 26, 1997, the lower court granted temporary custody of the girls to DHS, which placed them in foster care. The court continued its previous order of liberal visitation but again ordered that the girls were not to be left alone with Charlotte. Thereafter, however, DHS filed a motion requesting that the visitations between William and the girls also be supervised. DHS asserted that William and Charlotte were unable to protect their children and cited an incident in which Walter M., the girls' grandfather, was seen putting his hand down Christina's pants during a Christmas day visit between the girls and their parents. The motion also cited an incident in which Charlotte became very angry and slammed open an door, accidently hitting Christina in the forehead. Although Christina was not injured, DHS requested that all of the parents' visitations with the girls be supervised. In an order dated January 13, 1998, the court granted DHS's request. Thereafter, an amended case plan was filed with the court that reflected the change in William's visitation status. In particular, the amended plan stated that the reason for the change was William's inability to appropriately supervise the children during visits and that both parents have made inappropriate comments to the girls during the visits. Thereafter, upon a further dispositional hearing, the lower court granted appellants supervised visitation with the children of up to ten hours per week. The court further ordered Charlotte to continue to participate in substance abuse counseling and to attend the Christie Lane Workshop, and ordered Charlotte and William to continue to participate in family counseling and to cooperate with Partners in Community to address homemaking and parenting skills.
On March 31, 1998, DHS filed a semiannual administrative review with the court below. The review revealed appellants' progress with their case plan. In particular, the review indicated that Charlotte had completed an adult education program and claimed sobriety at that time, but that her claim could not be substantiated. The review further revealed that Charlotte had not initiated or attended services through Christie Lane or Huron County Counseling Center and that, despite DHS's request, William and Charlotte had not maintained appointments as scheduled with Partners in Community to work on parenting skills. With regard to Charlotte's inability to deal with stress, the review stated that although she had attended family counseling at the Huron County Counseling Center, she had not participated in counseling to deal with stress issues and still responds to stress with violence and anger. Regarding Charlotte's parenting deficiencies, the review stated that she had not completed the parenting classes as requested. On the housing issue, the review revealed that although William and Charlotte had secured adequate housing, they were still having problems budgeting money and using money appropriately. Finally, with regard to Tabbytha's counseling needs, the review stated that she was participating in counseling to address sexual issues and family issues.
Subsequently, on August 13, 1998, DHS filed another amended case plan with the court below. The amendment was filed in order to extend the plan for another six months to further address issues of money management, budgeting, and spending habits. Also in August 1998, DHS filed a motion to extend its temporary custody of Tabbytha and Christina to give the agency additional time to further address health, safety and budgeting issues. Through the statement of social worker Aric Fick, filed in support of the motion, the DHS asserted that appellants had been resistant to services throughout the case and needed additional work in counseling to further address family issues and Charlotte's lack of coping skills and anger problems. In a judgment of September 18, 1998, the lower court ordered that temporary custody of the girls remain with DHS and granted the agency's motion.
On February 9, 1999, the DHS conducted its semiannual administrative review of this case and determined that little progress had been made on the case plan objectives and that the children would be at high risk if returned to appellants. Accordingly, on February 25, 1999, DHS filed a motion for permanent custody of Tabbytha and Christina pursuant to R.C.2151.413. In that motion, DHS asserted that appellants had not followed through with counseling, had not completed the New Partners program, and that Charlotte had not followed through with a drug and alcohol assessment. Having previously found the girls to be dependent, the lower court proceeded to a dispositional hearing on May 17 and July 26, 1999. In addition, the court conducted an in camera interview of Tabbytha.
On August 13, 1999, the lower court issued a judgment, including findings of fact and conclusions of law, granting permanent custody of Tabbytha and Christina to DHS. In particular, the court found clear and convincing evidence to support its conclusion that following the placement of the girls outside of their home and notwithstanding reasonable case planning and diligent efforts by DHS to assist appellants in remedying the problems that initially caused the girls to be placed outside of their home, appellants had failed continuously and repeatedly to substantially remedy the conditions causing the girls to be placed outside of their home. The court further concluded that considering parental utilization of services and material resources that were made available to them for the purpose of changing their conduct, the children could not be placed with either parent within a reasonable time and should not be placed with either parent. The court then concluded that it was in the children's best interest that permanent custody of them be granted to DHS. In reaching this conclusion, the court expressly considered the children's interaction and interrelationship with each other, their parents, relatives, foster parents and others; the children's wishes, as expressed by them and through their guardian ad litem; the custodial history of the children, including the fact that they have been in the temporary custody of DHS for twelve or more months of a consecutive twenty-two month period; and the children's need for a legally secure permanent placement. It is from that judgment that appellants filed their separate appeals.
William Y.'s first and third assignments of error and Charlotte Y.'s first assignment of error will be addressed together. Throughout these assignments of error, appellants challenge the trial court's conclusion that Tabbytha and Christina cannot be placed with either parent within a reasonable time and should not be placed with either parent.
In order to grant an agency's motion for permanent custody, a juvenile court must consider the child's status under R.C. 2151.414(B) and determine whether: 1) the child cannot or should not be placed with either parent within a reasonable time pursuant to R.C. 2151.414(E); and 2) permanent custody is in the best interests of the child. In determining whether a child cannot or should not be placed with either parent, a juvenile court must conclude that clear and convincing evidence establishes one or more of the twelve predicate conditions listed in R.C.2151.414(E). If the court determines that one or more of the conditions listed in R.C. 2151.414(E) exists, the court must enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. After making this finding, the court must then determine whether terminating the parent's parental rights is in the best interest of the children.
In the present case, the trial court found, pursuant to R.C. 2151.414(E)(1) that:
 "* * * following the placement of the [girls] outside [their] home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the [children] to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the [children] to be placed outside [their] home, and considering parental utilization of medical, psychiatric, psychological, and the social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties * * *, the Court must enter a finding that the [children] cannot be placed with either parent within a reasonable time and should not be placed with either parent."
This was the only R.C. 2151.414(E) factor that the trial court found to support its conclusion that the children could not and should not be placed with their parents.
The question under R.C. 2151.414(E)(1) is whether the parents have substantially remedied the problem or problems that prompted the children's removal from the home. This is a very narrow factual question. This court has previously determined that to satisfy the requirements of R.C. 2151.414(E)(1):
"1. The child must be placed outside the home;
 "2. After which, the public agency must, through reasonable case planning and diligent efforts, attempt to help the parents remedy the causes of the child's removal from the home;
 "3. Even with such planning and effort, the parent must fail continuously and repeatedly to remedy the condition which caused the child's removal;
 "4. The burden is on the public agency to prove all of these elements by clear and convincing evidence." In the Matter of: Scott O., Fontez R., Xavier R., Dion R., Dontrice R., Shanton R. (Sept. 17, 1999), Lucas App. No. L-99-1012, unreported.
See, also, In the Matter of: Alexis W., Latoar W. aka Latoya G.
(Sept. 30, 1999), Lucas App. No. L-99-1022, unreported. In reviewing the trial court's decision, we note that the best statement of the reasons for a child's removal from the home is the complaint that resulted in such removal.
In the present case, the girls were removed from appellants' home and care on October 20, 1997 following an emergency shelter care hearing. That hearing was scheduled upon the filing of DHS's motion for a shelter care hearing to review the placement of the children. That motion requested that the children be placed with Patricia A. because appellants had moved the family out of the Dreamland Motel and into the home of William M. The motion further stated that Tabbytha had previously revealed to her guardian ad litem that William M. had molested her. Accordingly, these were the reasons for the children's removal from the home. In the proceedings below, it was undisputed that soon after the children were removed from the home, appellants found an apartment where they continued to live throughout the trial court proceedings. Indeed, Aric Fick, the DHS investigator assigned to the case, testified that the housing issues had been satisfactorily remedied. With regard to William M., the record reveals that after the girls were removed from the home and visitations were ordered to be supervised the girls no longer had contact with William M. Accordingly, it cannot be said that appellants failed to substantially remedy a condition that caused the children's removal from the home.
Appellee contends that it proved by clear and convincing evidence other factors listed under R.C. 2151.414(E). Although appellee did set forth evidence on other R.C. 2151.414 (E) factors, the trial court in its judgment of August 13, 1999, only found clear and convincing evidence to support a finding pursuant to R.C. 2151.414(E)(1). It is well-established that issues that were not reached by the trial court will not be reviewed by this court on appeal. In re Dismissal ofMitchell (1979), 60 Ohio St.2d 85, 90; Moats v. Metropolitan Bank ofLima (1974), 40 Ohio St.2d 47, 49-50. Accordingly, it would be improper for us to determine whether appellee had proven any of the other R.C. 2151.414(E) factors by clear and convincing evidence.
We therefore must conclude that the trial court's finding that appellants failed to substantially remedy the problems which caused the girls to be removed from the home was not supported by clear and convincing evidence. As such, the trial court erred in finding that the girls could not and should not be returned to either appellant within a reasonable time and erred in terminating appellants' parental rights. William Y.'s first and third assignments of error and Charlotte Y.'s first assignment of error are well-taken. Given this conclusion, the remaining assignments of error are moot.
On consideration whereof, the judgment of the Huron County Court of Common Pleas, Juvenile Division is reversed. This case is remanded to the trial court for further proceedings consistent with this decision. Court costs of this appeal are assessed to appellee.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Richard W. Knepper, P.J., JUDGES CONCUR.
 ____________________________ Mark L. Pietrykowski, J.